FINKELSTEIN v. IROQUOIS DOOR CO.   (No. 7451.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

BROKERS ⬤═⬤8—ACTION FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.

    Evidence in an action to recover commissions for procuring a contract for the sale of certain building materials by defendant *held* to show a brokerage contract, and not a sale.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. ⬤═⬤8.]

    Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Albert A. Finkelstein against the Iroquois Door Company, with counterclaim by defendant. From a judgment entered on a verdict, and from an order denying its motion for a new trial, defendant appeals. Judgment and order affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frederick Mellor, of New York City, for appellant.

Moses Feltenstein, of New York City, for respondent.

McLAUGHLIN, J.   Action to recover commissions alleged to have been earned by the plaintiff in procuring a contract for the sale of certain building materials for the defendant. The complaint alleged, in substance, that in September, 1910, the defendant agreed with the plaintiff, if he would procure for defendant a contract, either in his own name or the name of the defendant, to furnish the trim work for certain buildings in the course of construction, the defendant would pay a sum equal to the difference between $10,646.46, for which it was willing to furnish the materials, and the price specified in the contract of sale; that the plaintiff procured from the Gainsborough Building Company, the owner of said buildings, an agreement to purchase the materials specified for $13,500; and that the contract, while taken in the name of the plaintiff, was in fact taken for the defendant and assigned to it by the plaintiff, defendant agreeing to pay plaintiff the difference of $2,853.54. The answer denied all of the material allegations of the complaint, and alleged by way of counterclaim that the transaction was a sale by defendant to the plaintiff, as a result of which plaintiff became indebted to it, over certain credits allowed plaintiff, in the sum of $1,918.16. The reply put in issue the allegations of the counterclaim. The action was tried before a jury, which rendered a verdict in favor of the plaintiff for $3,518.54; and from the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

I am of the opinion that the judgment should be affirmed. Plaintiff's version of the transaction is supported by his own testimony and that of the witness Bookstaver, who, at the time of the transaction, was secretary of the Gainsborough Building Company. The plaintiff testified that he stated to one Salmon, the New York manager of the defendant, that he was in a position to procure a con-

tract to furnish the trim work for seven large buildings in the course of construction in Brooklyn, and that it was then agreed between plaintiff and defendant, represented by Salmon, that plaintiff should procure such contract, and if he did so defendant would pay him the difference between $10,664 and the price at which the materials were to be furnished; that plaintiff subsequently procured an offer from the Gainsborough Building Company of $13,500 for the materials to be furnished, and which offer was submitted to the defendant; and that defendant was unwilling to accept the offer of the building company unless it gave security for the payment of the purchase price of the materials. The plaintiff's testimony as to the security was corroborated by a letter written by the defendant to the plaintiff, in which it stated:

"We would not care to sell the firm you spoke of to us this morning, except on a secure basis."

The building company subsequently gave security which was satisfactory to the defendant, and a contract was then executed for the sale of the materials. In terms it provided for the sale of the materials in question by the plaintiff as seller to the Gainsborough Building Company; but both the plaintiff and Bockstaver testified that the' contract was so drawn at the instance of the defendant, and that Salmon stated that defendant as a manufacturer dealt largely with materialmen, and did not wish it to appear to the trade that it was competing with them by selling directly to the builder.

The plaintiff further testified that on the day following the execution of the contract it was assigned to the defendant, and thereafter it delivered materials of the aggregate value of $5,500 directly to the building company. The building company subsequently became financially embarrassed, and the balance of the materials were not delivered. The plaintiff's testimony is also corroborated by the fact that after the building company became financially embarrassed the defendant endeavored to collect its claim against the building company, and among other steps to that end took, by confession, a judgment for the amount due.

At the close of the case the court, in a charge to which no exception was taken, submitted to the jury the question as to whether the relation of plaintiff and defendant was that of buyer and seller, as contended by defendant, or of broker and principal, as contended by plaintiff. The jury found in favor of the plaintiff, upon evidence which was, in my opinion, sufficient to sustain its verdict.

It follows the judgment and order appealed from should be affirmed. Order filed.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). The defendant, on September 28, 1910, submitted to plaintiff a proposal to furnish certain doors and trim for buildings about to be erected by the Gainsborough Building Company, as per its estimate of September 27, 1910, for the sum of $10,664.46, which was on October 3, 1910, accepted by plaintiff

by an order of that date; whereupon, on the same day, plaintiff made a proposal to sell the same trim to the Gainsborough Building Company for the sum of $13,500, which was accepted by that company. Thus, on the written contracts between the parties, the transaction was a sale by defendant to the plaintiff, and a sale by plaintiff to the Gainsborough Building Company at an advance of $2,835.54. Plaintiff alleges in his complaint that he had an agreement with the defendant that:

"If plaintiff would procure, either in his own name for and on behalf of the defendant, or in the name of the defendant, a contract to furnish the trim work for the building, * * * that defendant would pay for the services rendered by this plaintiff in procuring said contract a sum of money equal to the difference between the contract price to be made between the owners of the building and the plaintiff * * * and the sum of $10,646.46; it being the intention of the above-named plaintiff that defendant was to charge the aforesaid sum of $10,646.46 for the aforesaid trim, and that the difference between that sum and the amount that the owners of the aforesaid buildings in course of construction agreed to be paid therefor was to be paid to this plaintiff by the defendant for his services in procuring the aforesaid agreement."

The defendant denied this agreement as thus alleged, and alleged a contract of sale from the defendant to the plaintiff; that defendant carried out the contract and delivered certain of the articles so sold, until the breach of the said contract by the plaintiff; that plaintiff has failed to pay $2,300 agreed to be paid for the sale and delivery of the standing trim; and that, after allowing plaintiff credit to which he was entitled, there was due to defendant from the plaintiff $1,918.-16, for which defendant demanded judgment.

Plaintiff testified to a conversation with the defendant's representative, in which he told defendant's representative that he (plaintiff) could obtain for defendant a contract for furnishing the trim work for seven large buildings in Brooklyn, to which defendant said, "Go on; bring up the plans, and we will figure on the job;" that he went on and got the plans, and gave them to the defendant, who subsequently gave plaintiff his estimate of $10,664, and on plaintiff's asking what there was in it for him, defendant's representative said, "Well, I will give you the difference between what you can get and this $10,664;" that plaintiff then went on and got an offer from the Gainsborough Company of $13,500 for the job. Plaintiff then brought Gainsborough, who was president of the building company, to the defendant, who gave the defendant references. When subsequently defendant wrote to plaintiff that it would not sell, except on a secure basis, that commercial report was not sufficiently encouraging to permit defendant to make any other terms. Afterwards defendant's representative said he would not take the job unless he could get security. Plaintiff then testified that he got what he called some security, when defendant said they could not sell to the builders; that plaintiff would have to act as though defendant were selling the stuff to plaintiff, and plaintiff were selling the stuff to the builders; that plaintiff was acting as defendant's dummy in the transaction, and plaintiff said that this was satisfactory. Plaintiff subsequently testified that defendant's representative said to the builder:

"We can't sell trim to you, as you are a builder. We have to sell it through Finkelstein, who will act as our dummy in this transaction."

Plaintiff further testified that he signed various papers for the defendant, most of them without reading them, and swore to complaints and affidavits, claiming to be the owner of this property which defendant had sold and delivered for these buildings.

Assuming that this correctly states the relations between the parties, I do not think it sustained the allegations of the complaint or the cause of action therein alleged. Plaintiff had obtained a contract with the Gainsborough Building Company for the purchase of this trim. Defendant had agreed to sell the trim for $10,664.46. The building company had agreed to pay $13,500 for the same trim. Plaintiff was to act as dummy in the transaction, taking a contract for defendant at the price that they were willing to sell for, and making a contract with the building company for what they were willing to pay, and was to receive as compensation the difference in the prices. It seems to me that this was all based on the assumption that the contract was to be completed. What plaintiff was to receive was all that the building company paid in excess of the $10,664.46 which the defendant was willing to accept for its goods. There was no agreement to pay commissions for obtaining a contract from the building company, but what defendant agreed to was that it would give plaintiff "the difference between what you [plaintiff] get and this $10,-664.46." If the contract had been completed, and defendant had got its $10,664.46, then plaintiff would have been entitled to anything in addition that plaintiff got out of the building company; but the contract was never completed. Defendant did not get its $10,664.46, and therefore, on the contract as testified to by the plaintiff, the latter never became entitled to anything from the defendant.

I am also inclined to think that the verdict was against the weight of the evidence. The plaintiff calmly sweeps away contracts, letters, affidavits, and complaints executed and verified by him, by saying that he did not read them and signed what he was told to sign. This is contradicted by the attorney who prepared them, and it cannot be assumed that he committed perjury. I do not think a party to an action should thus nullify formal instruments and legal papers, verified by his oath, in this manner.

I think, therefore, that the judgment should be reversed, and a new trial directed.